UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

EDDIE I. SIERRA,

      Plaintiff,

vs.

GENERAL MOTORS COMPANY.

      Defendant.

_____/

## COMPLAINT

Plaintiff EDDIE I. SIERRA, through undersigned counsel and for his Complaint, sues Defendant GENERAL MOTORS COMPANY, a foreign for-profit corporation ("GM"), and alleges as follows:

1.      This is an action for declaratory and injunctive relief pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. §§12181-12189 ("ADA"), as amended, and 28 C.F.R. Part 36. This is also an action for declaratory and injunctive relief to prevent discrimination which includes equal access to internet Website for services to order and secure information about Defendant's dealers online, available products and features and dealer's physical location.

2.      This Court has jurisdiction over this case based on federal question jurisdiction, 28 U.S.C. §1331 and the provisions of the ADA.  Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

3.      Venue is proper in this Court as all actions complained of herein occurred in the Southern District of Florida.

4.      Plaintiff is a resident of Miami-Dade County, Florida, is *sui juris*, and is disabled as defined by the ADA and ADA Amendments Act of 2008, 42 U.S.C. §12101 ("ADAAA").

5.      Plaintiff is and at all relevant times has been hearing disabled in that he suffers from profound sensorineural hearing loss, a permanent disease and medical condition that substantially and significantly impairs his ability to hear. Plaintiff thus is substantially limited in performing one or more major life activities, including, but not limited to, hearing everyday sounds and accurately understanding his world. As such, he is a member of a protected class under the ADA, 42 U.S.C. § 12102(1)-(2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101, *et seq*., and in 42 U.S.C. §3602(h).

6.      Because he is hearing disabled, Plaintiff cannot use his computer to view and comprehend all video content on websites without the assistance of appropriate and available closed captioning.

7.      Defendant GM is a foreign for-profit corporation authorized to do business and doing business in the State of Florida.  Upon information and belief, GM, through its contracts and dealership agreements with a nationwide chain of authorized dealers, operates and conducts sales of its cars, accessories, and merchandise through the authorized dealerships, including the Miami-Dade County authorized dealerships owned and operated by Braman Cadillac, located at 2060 Biscayne Blvd., Miami, Florida and Ocean Cadillac of Miami, located at 17800 Ipco Road, Miami, Florida which Plaintiff intended to patronize.

8.      Plaintiff's hearing disability limits him in the performance of major life activities, including hearing, and he requires assistive technologies, auxiliary aids and services for effective communication in navigating websites with the use of his computer, such as hearing aids, IP Relay Service, text messages, closed captioning, and instant messages communication in connection.

9.     Plaintiff frequently accesses the internet.  Because he is significantly and permanently hearing disabled, in order to effectively communicate and comprehend information available on the internet and thereby access and comprehend video content displayed on company websites, Plaintiff requires the websites to contain commercially available closed captioning for the video content.  Plaintiff also requires the use of assistive technologies, auxiliary aids and other services for effective communication in navigating websites with the use of his computer, including IP Relay Service, text messages, and instant messages communication in connection.

10.     At all times material hereto, upon information and belief GM was and still is an organization that, through its contract and dealership agreements, exercises specific control over and thus "operates" the dealerships for purposes of the ADA, including the dealership owned by Braman Cadillac and Ocean Cadillac of Miami.  Through the control over and effective operation of its authorized dealerships, GM sell cars, automotive parts, accessories, and merchandise, and provides automotive and repair services, to the public under the brand name "Cadillac". Each physical Cadillac dealership, including that owned and operated by Braman Cadillac and Ocean Cadillac of Miami, is open to the public.  As the entities exercising control over and operating the physical dealership, Defendant are defined as places of "public accommodation" within meaning of Title III because they are private entities that own and/or operate "a bakery, grocery dealer, clothing dealer, hardware dealer, shopping center, or other sales or rental establishment," per 42 U.S.C. §12181(7)(E) and 28 C.F.R. §36.104(2).

11.     Because Defendant sells the GM manufactured and branded cars, parts, and merchandise, and offer their maintenance and repair services through a physical dealership that is open to the public, Braman Cadillac and Ocean Cadillac of Miami dealerships are places of public

accommodation subject to the requirements of Title III of the ADA and its implementing regulation; 42 U.S.C. §12182, §12181(7)(E), and 28 C.F.R. Part 36.

12.     GM controls, maintains, and/or operates an adjunct website called www.GMusa.com (hereinafter the "Website").   One of the functions of the Website is to provide the public information on the various locations of GM's authorized dealerships, including Braman Cadillac and Ocean Cadillac of Miami, that sell GM manufactured and branded cars, parts, and merchandise, and offer various services, to the public.   GM also sells to the public its branded merchandise and goods through the Website and through the physical dealerships, including Braman Cadillac and Ocean Cadillac of Miami.

13.     The Website also services GM's physical dealerships, including Braman Cadillac and Ocean Cadillac of Miami, by providing information and a live video feed on its available products and branded merchandise, tips and advice, editorials, sales campaigns, events, and other information that Defendant is interested in communicating to its customers.

14.     Because the Website allows the public the ability to locate GM's physical dealerships (including Braman Cadillac and Ocean Cadillac of Miami), search GM's physical dealerships (including Braman Cadillac and Ocean Cadillac of Miami) for available car inventory, compare car prices available at GM's physical dealerships (including Braman Cadillac and Ocean Cadillac of Miami), schedule test drives of cars at GM's physical dealerships (including Braman Cadillac and Ocean Cadillac of Miami), request quotes for sales of cars at GM's physical dealerships (including Braman Cadillac and Ocean Cadillac of Miami), purchase GM's branded merchandise that is available both online and at the physical dealerships (including Braman Cadillac and Ocean Cadillac of Miami), apply for credit to purchase cars at the physical dealerships (including Braman Cadillac and Ocean Cadillac of Miami), and sign up for an electronic emailer to receive offers,

benefits, exclusive invitations, and discounts for use in the physical dealerships (including Braman Cadillac and Ocean Cadillac of Miami), the Website is an intangible service, privilege, advantage, and extension of, and gateway to, Defendant's physical dealerships, including Braman Cadillac and Ocean Cadillac of Miami.  By this direct nexus to the physical brick and mortar locations, including that of Braman Cadillac and Ocean Cadillac of Miami, the Website is an intangible service, privilege and advantage of the physical dealerships, including Braman Cadillac and Ocean Cadillac of Miami, which are places of public accommodation as defined under the ADA.  As such, the Website is covered by the ADA.

15.     Because the public can view and purchase GM's cars, parts, and merchandise that are also offered for sale by GM at and through its physical dealerships (including Braman Cadillac and Ocean Cadillac of Miami), search for available GM car inventory at the physical dealerships (including Braman Cadillac and Ocean Cadillac of Miami), compare car prices at the physical dealerships (including Braman Cadillac and Ocean Cadillac of Miami), schedule vehicle test drives at the physical dealerships (including Braman Cadillac and Ocean Cadillac of Miami), request quotes for sales of cars available at the physical dealerships (including Braman Cadillac and Ocean Cadillac of Miami), apply for credit to make car purchases at the physical dealerships (including Braman Cadillac and Ocean Cadillac of Miami), and sign up for an electronic emailer to receive offers, benefits, exclusive invitations, and discounts for use in the physical dealerships (including Braman Cadillac and Ocean Cadillac of Miami), the Website is an intangible service, privilege, advantage, and extension of, and gateway to, the physical dealerships, including Braman Cadillac and Ocean Cadillac of Miami, which are places of public accommodation pursuant to the ADA, 42 U.S.C. § 12181(7)(E).  As such, the Website is an intangible service, privilege and advantage of GM's controlled and operated brick and mortar dealerships, such as Braman Cadillac and Ocean

Cadillac of Miami, that must comply with all requirements of the ADA, must not discriminate against individuals with hearing disabilities, and must not deny those individuals the same full and equal enjoyment of the services, privileges and advantages afforded to the non-disabled general public both online and in its  physical dealerships.

16.     At all times material hereto, GM was and still is an organization owning and operating the Website for its own benefit and, upon information and belief pursuant to its contracts and dealership agreements, for the direct benefit of its authorized dealerships, including Braman Cadillac and Ocean Cadillac of Miami.  Since the Website is open to the public through the internet, by this nexus the Website is an intangible service, privilege and advantage of GM's brick and mortar dealerships, including the one owned by Braman Cadillac and Ocean Cadillac of Miami, which must comply with all requirements of the ADA, must not discriminate against individuals with hearing disabilities, and must not deny those individuals the full and equal enjoyment of the services, privileges and advantages afforded to the non-disabled public both online and at the physical dealer.  As such, GM and Braman Cadillac and Ocean Cadillac of Miami have subjected themselves and the associated Website to the requirements of the ADA.

17.     Plaintiff is, has been, or intends to be a customer of GM, Braman Cadillac and Ocean Cadillac of Miami and is interested in patronizing, and intends to patronize in the near future, the Braman Cadillac and Ocean Cadillac of Miami physical dealership.  Plaintiff also intends to continue in the future searching for other Cadillac operated brick and mortar dealership locations, checking Cadillac dealership hours of operation, searching available Cadillac car inventory, comparing Cadillac car prices, scheduling a test drive of Cadillac vehicles, requesting a quote for an available Cadillac car, applying for credit to purchase an Cadillac car, purchasing Aura-branded

merchandise from Defendant, and signing up for an electronic emailer to receive offers, benefits, exclusive invitations, and discounts for use at the Website or in Defendant's physical dealerships.

18.     The opportunity to shop and pre-shop Defendant's cars and other merchandise, to get educated about Defendant's cars and other merchandise, to schedule a test drive of Defendant's cars, to apply for credit, to purchase Cadillac merchandise, and to sign up for an electronic emailer to receive offers, benefits, exclusive invitations, and discounts for use in Defendant's physical dealerships from his home are important accommodations for Plaintiff because traveling outside of his home as a hearing disabled individual is often difficult, hazardous, frightening, frustrating and confusing experience.  Defendant has not provided its business information and Website video content in any other digital format that is accessible for use by deaf and hearing-impaired individuals who regularly use and rely upon closed captioning.

19.     Like many consumers, Plaintiff accesses a number of websites at a time to compare merchandise, prices, sales, discounts, and promotions.  Plaintiff may look at several dozens of sites to compare features, discounts, promotions, and prices.

20.     During the month of May 2020, Plaintiff attempted on a number of occasions to communicate with Defendant and utilize the Website to browse through the available cars and other merchandise and to review and take advantage of online offers and test drive scheduling with the intent to making a purchase through the Website or at Braman Cadillac and Ocean Cadillac of Miami dealership.

21.     Plaintiff utilizes the closed captioning option for video content that allows individuals who are hearing disabled to fully access and communicate with websites. Plaintiff also utilized commercially available IP Relay service to communicate with places he patronizes or intends to patronize.  However, Defendant's associated Website contains access barriers that prevent the free

and full use by hearing disabled individuals using keyboards and available closed captioning, specifically the following:

a.      Video content with no closed captioning;

b.      Video content with captioning that was incomplete, inaccurate or nonsensical; and

c.      Video content with captioning that contains inaccurate or missing punctuation.

22.     The Website also lacks prompting information and accommodations necessary to allow hearing disabled individuals who use closed captioning and IP Relay to locate and accurately interpret the information provided online to purchase Defendant's merchandise from the Website.

23.     Plaintiff attempted to locate an accessibility notice or policy on the Website, which would direct him to a webpage with contact information for disabled individuals who have questions and concerns or are having difficulties communicating with the Website.  There was none.  Plaintiff, at the time he first tried to access the Website, was also unable to locate a dedicated phone number for him to contact Defendant via an IP Relay Service for individuals with hearing impairments.

24.     The fact that Plaintiff could not communicate with or within the Website or with Defendant left him feeling excluded, as he is unable to participate in the same online computer shopping experience, with access to the information, merchandise, sales, discounts, and promotions as provided  at the Website and for use in the physical locations as the non-hearing disabled public.

25.     Plaintiff desires and intends to patronize Defendant's physical dealerships and use the Website but is unable to fully do so as he is unable to effectively communicate with Defendant due to his severe hearing disability and Defendant's associated Website's access barriers.  Thus, Plaintiff, as well as others who are deaf or with hearing disabilities, will suffer continuous and

ongoing harm from Defendant's intentional acts, omissions, policies, and practices as set forth herein unless properly enjoined by this Court.

26.     Because of the nexus between Defendant's physical dealerships, including that of Braman Cadillac and Ocean Cadillac of Miami, and the Website, and the fact that the Website clearly provides support for and is connected to Defendant's dealerships for its operation and use, the Website is an intangible service, privilege and advantage of Defendant's brick and mortar dealerships, including that of Braman Cadillac and Ocean Cadillac of Miami, that must comply with all requirements of the ADA, must not discriminate against individuals with disabilities, and must not deny those individuals the same full and equal enjoyment of the services, privileges and advantages afforded to the non-disabled public both online and at the physical locations, which are places of public accommodations subject to the requirements of the ADA.

27.     On information and belief, Defendant has not initiated a proper and effective Web Accessibility Policy to ensure full and equal use of the Website by individuals with disabilities or provided an IP Relay number for hearing impaired individuals to communicate with Defendant.

28.     On information and belief, Defendant has not instituted a proper and effective Web Accessibility Committee to ensure full and equal use of Website by individuals with disabilities.

29.     On information and belief, Defendant has not designated a proper and effective employee, such as a Web Accessibility Coordinator, to ensure full and equal use of the Website by individuals with disabilities.

30.     On information and belief, Defendant has not instituted a proper and effective Web Accessibility User Accessibility Testing Group to ensure full and equal use of the Website by individuals with disabilities.

31.     On information and belief, Defendant has not instituted a proper and effective User Accessibility Testing Group to ensure full and equal use of the Website by individuals with disabilities.

32.     On information and belief, Defendant has not instituted a proper and effective Bug Fix Priority Policy.

33.     On information and belief, Defendant has not instituted a proper and effective Automated Web Accessibility Testing program.

34.     On information and belief, Defendant has not created and instituted a proper and effective Specialized Customer Assistance line or service or email contact mode for customer assistance for the hearing disabled.

35.     On information and belief, Defendant has not created and instituted on the Website a proper and effective method for individuals with hearing disabilities to access the Website, nor created a proper and effective information portal explaining when and how Defendant will have the Website, applications, and digital assets accessible to the hearing disabled or deaf community.

36.     On information and belief, the Website does not meet the Web Content Accessibility Guidelines ("WCAG") 2.0 Level AA or higher of web accessibility. The international website standards organization, W3C, has published the widely accepted WCAG guidelines for making video content accessible to individuals with disabilities. These guidelines have been endorsed by the United States Department of Justice and one or more of the Federal courts, including courts within this District, and have been adopted by the United States Access Board, an independent federal agency that promotes equality for people with disabilities, as the standard to be followed for federal government agencies and their websites.

37.     On information and belief, Defendant has not disclosed to the public any intended GMts, changes, or lawsuits to correct the inaccessibility of the Website to hearing disabled individuals who want the safety and privacy of purchasing Defendant's cars and merchandise offered on the Website online from their homes.

38.     Thus, Defendant has not provided full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations provided by and through the Website, in contravention of the ADA.

39.     Public accommodations under the ADA must ensure that their places of public accommodation provide effective communication for all members of the general public, including individuals with hearing disabilities such as Plaintiff.

40.     The broad mandate of the ADA is to provide an equal opportunity for individuals with disabilities to participate in and benefit from all aspects of American civic and economic life. That mandate extends to internet shopping and service websites, such as the Website.

41.     On information and belief, Defendant is, and at all times have been, aware of the barriers to effective communication within the Website which prevent individuals with hearing disabilities from the means to comprehend information presented therein.

42.     On information and belief, Defendant is aware of the need to provide proper and effective full access to all visitors to the Website.

43.     The barriers that exist on the Website result in discriminatory and unequal treatment of individuals with disabilities who are hearing disabled, including Plaintiff.

44.     Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged hereinabove, and this suit for declaratory judgment and injunctive relief is his only means to secure

adequate and complete redress from Defendant's unlawful and discriminatory practices in connection with its website access and operation.

45.    Notice to Defendant is not required because of Defendant's failure to cure the violations.

46.    Enforcement of Plaintiff's rights under the ADA is right and just pursuant to 28 U.S.C. §§ 2201 and 2202.

47.    Plaintiff has retained the undersigned attorneys to represent him in this case and has agreed to pay them a reasonable fee for their services.

## COUNT I – VIOLATION OF THE ADA

48.    Plaintiff re-alleges paragraphs 1 through 47 as if set forth fully herein.

49.    Pursuant to 42 U.S.C. §12181(7)(E), Defendant is a place of public accommodation under the ADA, as defined within §12181(7)(E) and is subject to the ADA.

50.    Pursuant to 42 U.S.C. §12182, no individual shall be discriminated against by reason of such  disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation.

51.    Pursuant to 28 C.F.R. §36.204, "[a] public accommodation shall not, directly or through contractual or other arrangements, utilize standards or criteria or methods of administration that have the effect of discriminating on the basis of disability, or that perpetuate the discrimination of others who are subject to common administrative control."

52.    Pursuant to 42 U.S.C. §12181(7)(E), the Website is covered under the ADA because it provides the general public with the ability to locate Defendant's physical dealerships, search the available car inventory at the physical dealerships, including Braman Cadillac and Ocean Cadillac of Miami dealership, compare cars prices available at the physical dealerships, including the Braman Cadillac and Ocean Cadillac of Miami dealership, check for car availability at the physical

dealerships, including Braman Cadillac and Ocean Cadillac of Miami dealership, schedule test drives of vars at the physical dealerships, including Braman Cadillac and Ocean Cadillac of Miami dealership, request quotes for available vehicles at the physical dealerships, including Braman Cadillac and Ocean Cadillac of Miami dealership, apply for credit to purchase vehicles at the physical dealerships, including Braman Cadillac and Ocean Cadillac of Miami dealership, purchase Cadillac-branded merchandise that is also available for purchase at the physical dealerships, including Braman Cadillac and Ocean Cadillac of Miami dealership, and sign up for an electronic emailer to receive offers, benefits, exclusive invitations, and discounts for use at the physical dealerships, including Braman Cadillac and Ocean Cadillac of Miami physical dealership. The Website thus, via GM's contracts and dealership agreements, is and continues to be an extension of, gateway to, and an intangible service, privilege and advantage of Defendant's physical dealerships, including Braman Cadillac and Ocean Cadillac of Miami dealership.  Further, the Website also serves to augment Defendant's physical dealerships by providing the public information on the physical location of the dealerships and by educating the public as to Defendant's available vehicles, parts, and branded merchandise sold through the Website and at the physical dealerships.

53.    Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

54.    Specifically, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods,

services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

55.     In addition, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(III), unlawful discrimination also includes, among other things, "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

56.     Furthermore, pursuant to 28 C.F.R. §36.204, Defendant cannot, either directly or through their contractual arrangements such as GM's contracts and dealership agreements, utilize standards or criteria or methods of administration, including the Website that has a direct nexus to the physical dealerships, including Braman Cadillac and Ocean Cadillac of Miami dealership Plaintiff intended to patronize, that have the effect of discriminating against members of the public on the basis of a disability.

57.     The Website must comply with the ADA, but it is not, as specifically alleged hereinabove and below.

58.     Because of the inaccessibility of the Website, individuals with disabilities who are hearing disabled are denied the full and equal enjoyment of the information and services that Defendant have jointly made available to the public through the Website, and thus at the physical Braman Cadillac and Ocean Cadillac of Miami dealership location and place of public accommodation, in violation of 42 U.S.C. §12101, *et seq*, and as prohibited by 42 U.S.C. §12182, *et seq*.

59.     Defendant have failed to provide auxiliary aids and services for the video content referenced in paragraph 21 above, including but not limited to "qualified interpreters on-site or through video remote interpreting (VRI) services; note takers; real-time computer-aided transcription services; written materials; exchange of written notes; telephone handset amplifiers; assistive listening devices; assistive listening systems; telephones compatible with hearing aids; closed caption decoders; open and closed captioning, including real-time captioning; voice, text, and video-based telecommunications products and systems, including text telephones, videophones, and captioned telephones, or equally effective telecommunications devices; videotext displays; accessible electronic and information technology; or other effective methods of making aurally delivered information available to individuals who are deaf or hard of hearing." 28 C.F.R. § 35.104.

60.     The Website not fully accessible to users who are deaf and hearing disabled, including, but not limited to, having the following access barrier:

    a.  Videos with inconsistent captioning;

    b.  Video content with captioning that is incomplete, inaccurate, or nonsensical;

    c.  Video content with captioning that contains inaccurate or missing punctuation.

61.     A video capture of the video content at issue with the Website was also reviewed by Plaintiff's separate captioning expert, Tanya Ward English, who prior to executing a sworn declaration, performed an independent review of the Website. Plaintiff's captioning expert concluded that the issues claimed by Plaintiff do in fact exist and that Defendant is not in compliance with WCAG 2.0 or 2.1.  These barriers are pervasive and include, but are not limited to the following:

     a.      Videos content with no captioning;

     b.      Video content with captioning that was incomplete, inaccurate or nonsensical;

     c.      Video content with captioning that contained inaccurate or missing punctuation.

*See*, Expert Declaration and Curriculum Vitae of Tanya Ward English, attached as Composite Exhibit "A".

62.    More violations may be present on other pages of the Website, which can and will be determined and proven through the discovery process in this case.

63.    Further, the Website does not offer or include the universal symbol for the disabled that would permit disabled individuals to access the Website's accessibility information and accessibility facts.

64.    There are readily available, well established guidelines on the internet for making Websites accessible to the deaf and hearing disabled. These guidelines have been followed by other large business entities in making their websites accessible. Incorporating such basic components such as closed captioning for video content to make the Website accessible to the haring disabled such as Plaintiff would neither fundamentally alter the nature of Defendant's business nor would it result in an undue burden to the Defendant.

65.    Defendant have violated the ADA -- and continue to violate the ADA -- by denying access to the Website by individuals with hearing disabilities such as Plaintiff, who require the assistance of interface with closed captioning and screen reading to comprehend and access internet websites. The ADA violations on and within the Website are ongoing.

66.    The ADA and ADAAA require that public accommodations and places of public accommodation ensure that communication is effective.

67.    According to 28 C.F.R. §36.303(b)(1), auxiliary aids and services include "assistive listening system, text, and video-based telecommunications products and systems". Indeed, 28 C.F.R. §36.303(b)(1) specifically states that closed captioning is an effective method of delivering material available to individuals who are deaf or hard of hearing.

68.    According to 28 C.F.R. §36.303(c), public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities: "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability," 28 C.F.R. §36.303(c)(1)(ii).

69.    Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis of disability by public accommodations, and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.  In addition, 28 C.F.R. §36.204 specifically prohibits a public accommodation, through contractual or other arrangements, such as the contracts and dealership agreements between GM and its dealerships, such as Braman Cadillac and Ocean Cadillac of Miami, from utilizing standards or criteria or methods of administration such as the Website that have the effect of discriminating against the hearing disabled members of the public, such as Plaintiff.

70.    As alleged hereinabove, the Website has not been designed to interface with the widely and readily available technologies that can be used to ensure effective communication, and thus violates the ADA.

71.    As a direct and proximate result of Defendant's failure to provide an ADA compliant Website, with a nexus to brick and mortar physical dealerships, including Braman Cadillac and

Ocean Cadillac of Miami dealership Plaintiff intended to patronize, Plaintiff has suffered an injury in fact by being denied full access to and enjoyment of Defendant's associated Website and the intangible benefits, services and advantages of Braman Cadillac and Ocean Cadillac of Miami physical dealership.

72.      Because of the inadequate development and administration of the Website, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303, to remedy the ongoing disability discrimination.

73.      Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff appropriate and necessary injunctive relief; including an order to:

a)      Require Defendant to adopt and implement a proper and effective web accessibility policy to make publicly available and directly link from the homepage of the Website to a statement as to the Defendant's policy to ensure persons with disabilities have full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations through the Website.

b)      Require Defendant to take the necessary steps to make the Website readily accessible to and usable by hearing disabled users, and during that time period prior to the Website's being readily accessible, to provide an alternative methods (such as an IP Relay Service contact information) for individuals with hearing disabilities to be able to contact Defendant and access the information available on the Website until such time that the requisite modifications are made, and

c)      Require Defendant to provide the appropriate auxiliary aids such that individuals with hearing impairments will be able to effectively communicate with Defendant and the Website for purposes of viewing and locating Defendant's physical dealerships and locations, and becoming informed of and purchasing Defendant's vehicles and merchandise online, and during that time

period prior to the Website's being designed to permit individuals with hearing disabilities to effectively communicate, to provide an alternative method for individuals with hearing disabilities to effectively communicate with Defendant for such goods and services made available to the general public through the Website and in its physical locations.

72.    Plaintiff is entitled to recover his reasonable attorney's fees, costs and expenses pursuant to the ADA.  To that end, Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action and has agreed to pay them a reasonable fee for their services.

WHEREFORE, Plaintiff requests entry of judgment in his favor and against Defendant for the following relief:

A.    A declaration that the Website and Defendant's practices and omissions associated therewith are in violation of the ADA;

B.    An Order requiring Defendant, by a date certain, to effectively update the Website, and continue to monitor and update the Website (on an ongoing basis), to remove barriers and add proper and effective closed captioning on all video content on its Website and include alternative ways to access images or visual information (e.g., graphs, charts, animations, or URLs on slides), such as GM description, alternative text, PDF files, or Word documents, in order for individuals with hearing and other visual disabilities to be able to access, and continue to access, the Website and effectively communicate with the Website to the full extent required by Title III of the ADA;

C.    An Order requiring Defendant to develop and implement procedures to ensure that their online content conforms to the generally accepted accessibility technical standards, (to the extent necessary) so that individuals with vision, hearing and manual disabilities can acquire the same information, engage in the same interactions, and enjoy the same services as individuals without disabilities with substantially equivalent ease of use

D.      An Order requiring Defendant to develop and implement procedures to ensure that Defendant's content on the Website or YouTube channel or videos conforms to the to the generally accepted accessibility technical standards, to the extent necessary so that individuals with vision, hearing, and manual disabilities can acquire the same information, engage in the same interactions, and enjoy the same services as individuals without disabilities with substantially equivalent ease of use.

E.      An Order requiring Defendant to develop and implement procedures to ensure that the website content on the Website, iTunes, Instagram, Facebook, Twitter, Snapchat, LinkedIn, Tiktok, or YouTube platform conforms to generally accepted accessibility technical standards (to the extent necessary) so that individuals with vision, hearing, and manual disabilities can acquire the same information, engage in the same interactions, and enjoy the same services as individuals without disabilities with substantially equivalent ease of use.

F.      An Order requiring Defendant to develop effective mechanisms and implement effective procedures for Defendant to solicit, receive and respond to feedback regarding any barriers to access to the online content on their Website, iTunes, Instagram, Facebook, Twitter, Snapchat, LinkedIn, Tiktok, or YouTube channels or platform, as well as feedback on how to improve the accessibility of that content.

G.      An Order requiring Defendant, by a date certain, to clearly display the universal disabled logo within the Website, wherein the logo, similar to one as depicted here



would lead to a page which would state Defendant's accessibility information, provide a IP Relay Service contact information and other relevant facts, policies, and accommodations. Such a clear

display of the disabled logo is to ensure that individuals who are disabled are aware of the availability of the accessible features of the Website;

H.      An Order requiring Defendant, by a date certain, to provide ongoing support for web accessibility by implementing a proper and effective website accessibility coordinator, a website application accessibility policy, and providing for website accessibility feedback to ensure compliance thereto;

I.      An Order directing Defendant, by a date certain, to evaluate its policies, practices and procedures toward persons with disabilities, for such reasonable time to allow Defendant to undertake and complete corrective procedures to its Website, policies, practices and procedures;

J.      An Order directing Defendant, by a date certain, to establish a proper and effective policy of web accessibility and accessibility features for the Website to ensure effective communication for individuals who are hearing disabled and provide an IP Relay Service contact information;

K.      An Order requiring, by a date certain, that any third-party vendors who participate on Defendant's Website to be fully accessible to the hearing and visually disabled;

L.      An Order directing Defendant, by a date certain and at least once yearly thereafter, to provide mandatory web accessibility training to all employees who write or develop programs or code for, or who publish final content to, the Website on how to conform all web content and services with ADA accessibility requirements and applicable accessibility guidelines;

M.      An Order directing Defendant, by a date certain and at least once every three months thereafter, to conduct proper and effective automated accessibility tests of the Website to identify any instances where the Website is no longer in conformance with the accessibility

requirements of the ADA and any applicable accessibility guidelines, and further directing Defendant to send a copy of the twelve (12) quarterly reports to Plaintiff's counsel for review;

N.      An Order directing Defendant, by a date certain, to make publicly available and directly link from the Website homepage, a statement of Defendant's Accessibility Policy to ensure the persons with disabilities have full and equal enjoyment of the Website and shall accompany the public policy statement with an accessible means of submitting accessibility questions and problems;

O.      An award to Plaintiff of his reasonable attorney's fees, costs and expenses; and

P.      Such other and further relief as the Court deems just and equitable.

DATED:  10/16/2020.

MESA LITIGATION
& LEGAL CONSULTING, P.A.
4960 SW 72 Avenue, Suite 206
Miami, Florida 33155
(305) 569-3005
cmesa@mesafloridalawyer.com

/s/Carlos A. Mesa
FBN: 0067784

**Declaration of Eddie I. Sierra**

I, Eddie I. Sierra, submit this declaration and declare the following:

1. I declare that I have personal knowledge of the facts contained herein.

2. I am a resident of the City of Miami in the State of Florida and the United States of America.

3. I have been diagnosed by a Clinical Audiologist with "profound sensorineural hearing loss."

4. I am profoundly deaf and rely on hearing aids and lip-reading to understand spoken communication and speech.

5. When I watch television or videos on a computer, smartphone or mobile device, I rely on captioning to understand the aural content and spoken language.

6. With the aides I have available to me, I can function in most areas of my day to day life but using technology, where such tools are either not present or not working as they are designed to be, can be extremely difficult for me.

7. Technology is an important part of my daily life and allows me to prepare and perform my professional duties as well as maintain a greater quality of life.

8. Professionally, I serve as the President and Director of a not-for-profit, which advocates for the rights of senior citizens and disabled individuals.

9. Using technology is necessary, as I am required to be familiar with current issues and laws affecting my clients and me.

10. My health issues are somewhat extreme and proper access to the worldwide web - internet and the information it contains is an important accommodation to me.

11. When using technology, I try to use the advanced features or additional hardware and/or software that aids in negating limitations. At times this is helpful but often it is not enough as the websites, news feeds, brick and mortar stores as well as their calling lines, and call-in services are unable to accommodate me and my disability.

12. On or about May 12, 2020, I was on the Cadillac cars website https://www.cadillac.com/I wanted to search the website for the purchase or lease of an automobile.

13. While on the site, I came across and viewed videos housed or hosted there. The videos did not have closed captioning.

14. I was seeking information regarding the following: lease and purchase options; model selection, safety and advantages in vehicle efficiency.

15. Now with restrictions imposed by Covid-19, I contacted Braman Cadillac and Ocean Cadillac of Miami about additional information on Volvo cars, I was referred back to the website which was deficient and inadequate because of no captioning at all of the subject video

Under penalties of perjury, I hereby and affirm the following statements are true and correct.


May 20, 2020                                          _____